[66 NYS3d 300]

In the Matter of ELIZABETH C. ADMINISTRATION FOR CHILDREN'S SERVICES, Respondent; OMAR C., Appellant. (Proceeding No. 1.)

In the Matter of ALEXANDER C. ADMINISTRATION FOR CHILDREN'S SERVICES, Respondent; OMAR C., Appellant. (Proceeding No. 2.)

In the Matter of JOANA C. ADMINISTRATION FOR CHILDREN'S SERVICES, Respondent; OMAR C., Appellant. (Proceeding No. 3.)

In the Matter of JESUS C. ADMINISTRATION FOR CHILDREN'S SERVICES, Respondent; OMAR C., Appellant. (Proceeding No. 4.)

In the Matter of OSCAR C. ADMINISTRATION FOR CHILDREN'S SERVICES, Respondent; OMAR C., Appellant. (Proceeding No. 5.)

Second Department, November 29, 2017

194

### APPEARANCES OF COUNSEL

*Center for Family Representation*, New York City (*Michele Cortese* and *Latham & Watkins LLP* [*Tracey Orick*, pro hac vice, and *Scott D. Gallisdorfer*, pro hac vice], of counsel), for appellant.

*Zachary W. Carter, Corporation Counsel*, New York City (*Scott Shorr, Elizabeth S. Natrella* and *John Moore* of counsel), for respondent.

*Seymour W. James, Jr.*, New York City (*Tamara A. Steckler* and *Gary Solomon*), Attorney for the Children.

### OPINION OF THE COURT

MASTRO, J.P.

The present matter requires us to determine whether a parent in abuse and/or neglect proceedings brought pursuant to Family Court Act article 10, who has been excluded from the household in which the children reside by an order of protection, is entitled to a prompt hearing in accordance with Family Court Act § 1028 to challenge the propriety and necessity of the exclusion. Based upon the statutory framework of article 10, and mindful of the weighty due process considerations implicated by such an exclusion, we conclude that the parent is entitled to a prompt hearing.

Factual Background

The appellant, Omar C. (hereinafter the father), is the father of the five children who are the subjects of these proceedings:

Elizabeth C., Alexander C., Joana C., Jesus C., and Oscar C., all of whom were born between 2004 and 2014. Prior to the filing of the initial petitions in this matter, he lived with the children and their mother at a residence in Queens. On March 15, 2016, the petitioner, Administration for Children's Services (hereinafter ACS), filed five separate petitions pursuant to Family Court Act article 10 against the father, alleging that he had sexually abused his 14 year-old niece, Erika C., on an unspecified date during the preceding November, and that the children therefore were derivatively abused and/or neglected. On the same day that the petitions were filed, the Family Court issued a "full stay away" temporary order of protection which expressly excluded the father from the family home. Although the temporary order of protection recited that the father was present in court and was advised of the contents of the order, no hearing was conducted prior to its issuance. The order further recited that it would remain in force until and including the following day. The next morning, March 16, 2016, the court issued a second temporary order of protection, identical in all relevant respects to the first, with an expiration date of August 4, 2016. Again, no hearing preceded the issuance of this temporary order of protection excluding the father from the residence and from contact with the children. However, it appears that the matter was set down for a hearing pursuant to Family Court Act § 1028 to be held on March 18, 2016, for the purpose of assessing the propriety of the exclusion of the father from the family home.

Family Court Act § 1028 mandates, with certain exceptions not relevant here, that upon the request of a parent for a hearing to determine whether a child who has been temporarily removed should be returned, or whether the removal should continue based on an imminent risk to the child's life or health, a hearing shall be held within three court days of the request.

The hearing commenced and limited testimony was taken on March 18, before the Family Court adjourned the matter for a continued hearing on March 21. However, on that day, ACS filed new abuse and/or neglect petitions against the father based on the same allegations, and withdrew the previously filed petitions of March 15. In connection therewith, the court issued a third temporary order of protection on March 22, 2016. That order, which was issued ex parte and had an expiration date of May 11, 2016, again excluded the father from contact with the children and from the residence where the children

continued to live with their mother. On the same date, the court orally advised counsel on the record that a hearing pursuant to either Family Court Act § 1027 or § 1028 was "inappropriate" because "I do not consider this a removal . . . and the standard to be applied is not imminent risk." The father's counsel indicated that he would make a formal written motion for a section 1028 hearing, and the matter was adjourned to March 29.

On the morning of March 29, the Family Court released the children to the mother on the condition that she abide by the previously issued order of protection excluding the father from the home. The court also issued another order of protection, to expire after a period of one year, which excluded the father from the home but authorized his agency-supervised visitation with the children. Additionally, the court signed an order on behalf of the father directing the parties to show cause why the children should not be paroled to their parents and why the father should not be permitted to resume residency in the family home. The order to show cause sought a hearing pursuant to Family Court Act § 1028 to determine the merits of the father's motion. In support, the father took the position that his loss of the physical care and custody of the children incidental to his exclusion from the family home was the functional equivalent of a removal of the children, thereby entitling him to the heightened due process afforded by a section 1028 hearing.

The mother and the Attorney for the Children supported the father's motion, while ACS opposed it on the ground that the children remained at imminent risk of harm in view of the allegations against the father. ACS took the position that a hearing pursuant to Family Court Act § 1028 was unwarranted because the children had not been removed from the family home, and their legal custody had not been transferred to another party. ACS reasoned that, since the father had merely been excluded from the home, his remedy was to seek a hearing pursuant to Family Court Act § 1061 to modify the order of protection. Such hearings are discretionary in nature and need not be held within any particular time frame.

On April 4, 2016, the Family Court orally denied the father's motion on the record, with a written decision to follow. The court further indicated that it would treat the motion as an application for a Family Court Act § 1061 modification hearing. On April 22, 2016, the Family Court issued its written decision

and order denying the father's motion for a section 1028 hearing on the ground that such hearings are only appropriate where a child or children have been physically removed from their residence, a circumstance which was not present in this case. The father appeals from this order, raising statutory and constitutional arguments for our consideration.

By way of additional background, we note that a Family Court Act § 1061 hearing to modify the order of protection commenced on April 20, 2016, and culminated in an order dated June 13, 2016, denying, pending further proceedings, a modification of the order of protection.

Thereafter, during the pendency of this appeal, this Court was advised that the Family Court proceedings had been resolved as a result of a seven-month adjournment in contemplation of dismissal that had been reached in the matter. Pursuant to that disposition, the order of protection excluding the father from the family residence was no longer in effect, and the father had returned to the home in February 2017. Accordingly, the additional question of whether the instant appeal has been rendered academic is now presented.

Analysis

### Mootness

Since the father has now returned to the family household and the order of protection excluding him therefrom is no longer in effect, the issue of whether this appeal is academic—and, if so, whether an exception to the mootness doctrine applies—is squarely before us. At the oral argument of this appeal, the father and ACS took the position that this matter has indeed been rendered academic, but that the circumstances of the case warrant application of the mootness exception so that the merits may be decided. Conversely, the Attorney for the Children insisted that the appeal is not academic at all, owing to the enduring consequences that flow from the abuse allegations made against the father. We find the position of the father and ACS to be persuasive.

> "It is a fundamental principle of our jurisprudence that the power of a court to declare the law only arises out of, and is limited to, determining the rights of persons which are actually controverted in a particular case pending before the tribunal. This principle, which forbids courts to pass on academic,

hypothetical, moot, or otherwise abstract questions, is founded both in constitutional separation-of-powers doctrine, and in methodological strictures which inhere in the decisional process of a common-law judiciary" (*Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 713-714 [1980] [citations omitted]; *see Matter of Kirkland v Annucci*, 150 AD3d 736, 737-738 [2017]; *Matter of Powell v Mount St. Mary Coll.*, 142 AD3d 1082, 1082-1083 [2016]).

Put another way, because courts are not in the business of issuing advisory opinions, they generally will refrain from deciding the merits of a matter "unless an adjudication of the merits will result in immediate and practical consequences to the parties" (*Coleman v Daines*, 19 NY3d 1087, 1090 [2012]; *see Matter of New York State Commn. on Jud. Conduct v Rubenstein*, 23 NY3d 570, 576 [2014]; *Matter of Colon v Annucci*, 151 AD3d 1061, 1062 [2017]).

Application of the foregoing principles to the facts of this case leads us to conclude that the present matter is academic. At issue on this appeal is whether the father was entitled to a hearing pursuant to Family Court Act § 1028 to seek his return to the family residence so that he could once again enjoy the care and custody of his children. However, since the temporary order of protection excluding him from the home is no longer operative, and since the father has actually resumed living with the children, it is clear that any determination we might issue in this matter would have no direct effect on the rights of the parties before us (*see e.g. Matter of Hearst Corp. v Clyne*, 50 NY2d at 714; *Matter of Yadgarova v Yonatanov*, 144 AD3d 830, 831 [2016]). Our decision in *Matter of Lucinda R. (Tabitha L.)* (85 AD3d 78 [2011]) is particularly instructive in this regard. There, three children who were the subjects of neglect proceedings were removed from the residence of their mother, who was prohibited by an order of protection from all unsupervised contact with them, and placed in the care of their father, who resided at another location. Like the father in the present case, the mother in *Matter of Lucinda R.* requested a hearing pursuant to Family Court Act § 1028, seeking to be reunited with her children. The Family Court denied the request and the mother appealed, but while the appeal was pending, the Family Court returned the children to the mother. Accordingly, our Court determined that "the mother's appeal challenging the denial of her application for a Family Court Act § 1028 hearing is moot, since she has now received the relief that she

would have received had the Family Court Act § 1028 hearing been conducted" (*Matter of Lucinda R. [Tabitha L.]*, 85 AD3d at 83).

The Attorney for the Children in the case before us contends, however, that the appeal is not in fact academic because there are enduring legal and reputational consequences to the father which flow from the issuance of multiple orders of protection against him. To be sure, orders which determine, or strongly suggest, the commission of wrongdoing by a party may well adversely affect that party's interests in future legal proceedings and have a stigmatizing effect on his reputation, even when the substantive relief they direct is no longer warranted or in effect. Since those enduring consequences can be obviated by a successful appellate challenge, courts have consistently determined that appeals from such orders are not academic (*see e.g. Matter of New York State Commn. on Jud. Conduct v Rubenstein*, 23 NY3d at 576-578 [enduring adverse reputational consequences from resolved disciplinary proceeding]; *Matter of Bickwid v Deutsch*, 87 NY2d 862, 863 [1995] [potential enduring consequences from civil contempt order where sentence had been completed]; *Matter of Williams v Cornelius*, 76 NY2d 542, 546 [1990] [lasting consequences from criminal contempt adjudication despite service of sentence]). Arguably, the most common scenario in which such circumstances arise is an appeal from an order of protection which, despite the expiration of its operative provisions, contains language indicating a strong likelihood that the appealing party committed a criminal or family offense and directing him to desist from the commission of similar offenses while the order remains in effect. Such an appeal is not academic, since the party's interest in avoiding the adverse legal and reputational consequences of the order will be directly impacted by the determination of the appeal (*see Matter of Veronica P. v Radcliff A.*, 24 NY3d 668, 671-672 [2015]; *Matter of Sommella v Kimble*, 150 AD3d 1018 [2017]; *Matter of Cody W. [Ronald L.]*, 148 AD3d 914, 915 [2017]; *Matter of Crenshaw v Thorpe-Crenshaw*, 146 AD3d 951, 951-952 [2017]).

However, while the orders of protection issued against the father in the present case contained language similar to that found in the orders reviewed in the foregoing decisions, none of those orders of protection is the subject of the present appeal. Rather, the father seeks review only of the Family Court's determination denying his motion for a hearing pursuant to Fam-

ily Court Act § 1028. Significantly, that determination contains no finding that he engaged in misconduct, and carries with it no enduring adverse legal or reputational ramifications for the father. Moreover, since such potential effects are absent from the challenged order, a determination of this appeal in favor of the father would do nothing to vindicate any interest he has in avoiding negative consequences. Rather, should he prevail on this appeal, the father would only be entitled to a determination that the Family Court should have granted his motion for a hearing pursuant to Family Court Act § 1028, a ruling which would do nothing to ameliorate any lingering adverse effects that may flow from the unappealed orders of protection issued against him. Accordingly, the reliance of the Attorney for the Children on decisions in appeals from expired orders of protection fails to alter our conclusion that the present appeal is academic.

Nevertheless, a determination that the appeal has been rendered academic does not end our inquiry. While an academic appeal ordinarily suffers the fate of dismissal, the father requests that the merits of his appeal be considered under the exception to the mootness doctrine. This exception may apply where the circumstances of a case evince an overarching public interest in its adjudication, including "(1) a likelihood of repetition, either between the parties or among other members of the public; (2) a phenomenon typically evading review; and (3) a showing of significant or important questions not previously passed on, i.e., substantial and novel issues" (*Matter of Hearst Corp. v Clyne*, 50 NY2d at 714-715; *see City of New York v Maul*, 14 NY3d 499, 507 [2010]; *Matter of In Defense of Animals v Vassar Coll.*, 121 AD3d 991, 992-993 [2014]). A review of these factors persuades us that the exception to the mootness doctrine should be applied herein.

Initially, Family Court orders excluding a parent from his or her child's residence based on allegations of abuse or neglect are not uncommon, as both Family Court Act §§ 1027 (b) (v) and 1028 (f) direct the court, when faced with a request to remove the child from the family home, to consider whether the issuance of an order of protection excluding the accused parent from the home may be a more efficacious means of eliminating imminent risk to the child. Moreover, we are aware of at least one other reported case in which a parent who challenged his exclusion from the family residence sought a prompt hearing pursuant to Family Court Act § 1028, as in the present

case, and was denied such a hearing (*see Matter of T.L., Jr.*, 13 Misc 3d 1179 [Fam Ct, Queens County 2006]). Additionally, as we pointed out in *Matter of Lucinda R. (Tabitha L.)* (85 AD3d at 84), since Family Court Act § 1028 requires the holding of an expedited hearing within three court days, "[w]here . . . a parent is denied his or her request for a hearing pursuant to [that statute], appellate review of such a denial cannot be completed before three court days have elapsed. As such, this issue is capable of repetition and likely to evade review" (*see also City of New York v Maul*, 14 NY3d at 507). Finally, the issue presented on this appeal—whether the excluded parent is entitled to the expedited hearing mandated by Family Court Act § 1028—raises a substantial and novel issue of statewide importance regarding the rights of parents and children whose relationship has been severed, or at least substantially altered, by the conduct of the State (*see Matter of Lucinda R. [Tabitha L.]*, 85 AD3d at 85). Accordingly, we turn to the merits of the father's appeal.

### Necessity of Family Court Act § 1028 Hearing

Family Court Act § 1028 provides for an expedited hearing to determine whether a child who has been temporarily removed from a parent's care and custody should be reunited with that parent pending the ultimate determination of the child protective proceeding. To that end, the statute reads, in relevant part, as follows:

> "(a) [u]pon the application of the parent or other person legally responsible for the care of a child temporarily removed under this part or upon the application of the child's attorney for an order returning the child, the court shall hold a hearing to determine whether the child should be returned . . . Except for good cause shown, such hearing shall be held within three court days of the application and shall not be adjourned. Upon such hearing, the court shall grant the application, unless it finds that the return presents an imminent risk to the child's life or health."

Significantly, the statute further mandates that "(f) [t]he court shall also consider and determine whether imminent risk to the child would be eliminated by the issuance of a temporary order of protection . . . directing the removal of a person or persons from the child's residence."

As they did before the Family Court, the father and the Attorney for the Children maintain that the father's motion for an expedited hearing pursuant to Family Court Act § 1028 to challenge his exclusion from contact with the children should have been granted. Furthermore, contrary to the position it previously took, ACS now concurs that a section 1028 hearing should have been held in this matter. We likewise agree with the parties' unanimous assessment of this issue by concluding that the temporary severance of a parent-child relationship under article 10 of the Family Court Act triggers the right to a section 1028 hearing.

Our analysis proceeds from the fundamental principle that, with limited exceptions, "[a] parent has a 'right' to rear [his or her] child, and the child has a 'right' to be reared by [his or her] parent" (*Matter of Bennett v Jeffreys*, 40 NY2d 543, 546 [1976]; *see Santosky v Kramer*, 455 US 745, 753-754 [1982]; *Rankel v County of Westchester*, 135 AD3d 731, 733 [2016] ["parents have a liberty interest in the care and custody of their children, and children have a parallel liberty interest in not being dislocated from their family"]). In recognition of these reciprocal, constitutionally protected liberty interests in " 'the emotional attachments that derive from the intimacy of daily family association' " (*Southerland v City of New York*, 680 F3d 127, 142 [2d Cir 2012], quoting *Kia P. v McIntyre*, 235 F3d 749, 759 [2d Cir 2000]), courts have acknowledged that " '[a]s a general rule . . . before parents may be deprived of the care, custody or management of their children without their consent, due process—ordinarily a court proceeding resulting in an order [approving,] permitting[, or ordering] removal—must be accorded to them' " (*Graham v City of New York*, 869 F Supp 2d 337, 350 [ED NY 2012], quoting *Tenenbaum v Williams*, 193 F3d 581, 593 [2d Cir 1999]; *see Southerland v City of New York*, 680 F3d at 142 ["except in emergency circumstances, judicial process must be accorded both parent and child before removal of the child from his or her parent's custody may be effected"]). Of course, a hearing before removal of a child from his or her parents' custody may not always be possible, and "government officials may remove a child from his or her parents' custody before a hearing is held where there is an objectively reasonable basis for believing that a threat to the child's health or safety is imminent" (*Gottlieb v County of Orange*, 84 F3d 511, 520 [2d Cir 1996]). However, even where a child is removed from his or her parent's custody under emer-

gency circumstances, the parent is still entitled to "a hearing 'at a meaningful time and in a meaningful manner' " (*id.* at 520, quoting *Armstrong v Manzo*, 380 US 545, 552 [1965]), and the parent "may have a viable procedural due process claim . . . if [he or she] does not receive a prompt postdeprivation hearing" (*Rankel v County of Westchester*, 135 AD3d at 733-734).

Consistent with the foregoing, the child protective statutes of Family Court Act article 10 have a twofold purpose:

> "to establish procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being [and] to provide a due process of law for determining when the state, through its family court, may intervene against the wishes of a parent on behalf of a child so that his needs are properly met" (Family Ct Act § 1011; *see Matter of Maria C. [Delilah C.]*, 118 AD3d 874, 874 [2014]; *Matter of Brianna L. [Marie A.]*, 103 AD3d 181, 186-187 [2012]; *Matter of Lucinda R. [Tabitha L.]*, 85 AD3d at 86).

Article 10 contains a number of provisions that seek to balance these competing interests. For example, Family Court Act § 1022 (a) (i) (B) permits the temporary removal of a child before a petition is even filed, as long as, inter alia, immediate removal appears necessary "to avoid imminent danger to the child's life or health." Similarly, once a child protective petition has been filed, Family Court Act § 1027 (a) (iii) authorizes the court to conduct a hearing "to determine whether the child's interests require protection, including whether the child should be removed from his or her parent," with the hearing to be scheduled for the next court day after the application for the hearing has been made. Family Court Act § 1027 (b) (i) also provides that upon such a hearing, temporary removal is only authorized where the court finds it necessary "to avoid imminent risk to the child's life or health" (*see Nicholson v Scoppetta*, 3 NY3d 357, 376 [2004]). Finally, Family Court Act § 1028 mandates that where no section 1027 hearing has occurred prior to removal, the court, upon request, must hold a hearing within three court days to determine whether the child should be returned (*see Matter of Danazah B.D. [Audrey B.]*, 125 AD3d 964, 965 [2015] ["(t)he Family Court has no discretion to deny, without a hearing, a parent's application pursuant to Family Court Act § 1028 if the conditions of the statute are satisfied"]; *Matter of Kristina R.*, 21 AD3d 560, 562-563

[2005] [same]; *Matter of Michael Z.*, 40 AD2d 1034, 1034 [1972] [if a child is temporarily removed without a hearing at which the parent can fully participate, "(d)ue process is accorded the parent by the procedure set forth in section 1028 of the Family Court Act"]). Moreover, the court is required to grant the application for the return of the child "unless it finds that the return presents an imminent risk to the child's life or health" (Family Ct Act § 1028 [a]). Thus, the expedited nature of the hearing conducted under Family Court Act § 1028 addresses the parent's procedural due process rights, while the requirement that the child be returned unless the agency can prove an "imminent risk" to him or her satisfies substantive due process requirements.

Accordingly, the foregoing statutes and others within part 2 of Family Court Act article 10, in recognition of the serious constitutional implications of interfering with the relationship between a parent and child, only permit the removal of the child from the parent upon the conducting of a prompt assessment of the situation while applying the substantive standard of imminent risk to the child. It is true that the statutes within part 2 generally employ the term "removal" in the context of physically removing the child from his or her home (*see e.g.* Family Ct Act § 1021 [authorizing certain individuals to "temporarily remove a child from the place where he or she is residing" with parental consent]; Family Ct Act § 1022 [a] [i] ["(t)he family court may enter an order directing the temporary removal of a child from the place where he or she is residing before the filing of a petition"]; Family Ct Act § 1026 [a] [setting forth procedural protocols when "there has been an emergency removal of a child from his or her home without court order"]; Family Ct Act § 1027 [b] [ii] [referencing the need to determine "whether reasonable efforts were made . . . to prevent or eliminate the need for removal of the child from the home"]; Family Ct Act § 1028 [b], [c], [d] [also requiring consideration of whether reasonable efforts were made to avoid the need for "removal of the child from the home"]; *see also Nicholson v Scoppetta*, 3 NY3d at 372 [noting that Family Ct Act §§ 1022, 1024, and 1026 through 1028 all "relate to the removal of a child from home"]; *Matter of Lucinda R. [Tabitha L.]*, 85 AD3d at 86 ["(a) survey of statutes within article 10 shows that the word 'removal' or 'removed' is used in the context of the State's effectuation of the child's removal from the home"]).

■ However, no language in any of the statutes expressly limits the due process protections they contain to only those situations involving the physical removal of the child from the family household. Instead, the repeated references in those statutes to the child's home appear merely to be an acknowledgment that the child's removal from the home traditionally has been the remedy employed to protect the child from an allegedly abusive or neglectful parent. But physical removal from the home itself is not what protects the child; rather, it is the severance of contact between the child and the alleged offending parent which offers that protection, and which concomitantly triggers the parent's due process rights. Where that severance is accomplished through an alternate mechanism—such as the stay away order of protection excluding the father from the family residence in this case—the same interference with the constitutionally protected parent-child relationship arises, and the same due process protections must be afforded to the parent. Indeed, several Family Court Act article 10 statutes recognize this principle by reciting that once a prompt assessment has been performed and a determination of imminent risk to the child has been made, the court is additionally required to consider and determine, as an alternative to the child's removal, whether the imminent risk would be eliminated by the issuance of a temporary order of protection directing the removal of the alleged offender from the child's residence pending resolution of the article 10 child protective proceeding (*see* Family Ct Act §§ 1022 [a] [v]; 1027 [b] [v]; 1028 [f]). Consequently, the statutory framework of Family Court Act article 10 clearly contemplates that both the temporary physical removal of the child from the family household *and* the temporary exclusion of a parent from the home and from contact with the child warrant the same due process protections—an expedited hearing into the need for such relief, and a determination that the relief is necessary to eliminate an imminent risk to the child's life or health (*see Nicholson v Scoppetta*, 3 NY3d at 379 [observing that under Family Ct Act § 1027, only after a court has conducted a prompt hearing and found that the child is at imminent risk can it consider whether that risk may be eliminated by excluding the offending parent, rather than removing the child, from the family residence]; *Matter of Naomi R.*, 296 AD2d 503, 504 [2002] [reinstating a temporary order of protection excluding the respondent father from the home following an expedited hearing pursuant to Family Ct Act

§ 1027 and a determination that the father's return to the home would present an imminent risk to the children, thereby upholding the application of these due process protections to a parent when he is excluded from the household, not only when the child is removed from the home]).

Since the removal of a child from the family home and the exclusion of a parent from that same home require equal showings of imminent risk, and both result in similar infringements on the constitutionally protected parent-child relationship, we conclude that both trigger the same due process protections. Accordingly, in cases such as the one before us, where no "imminent risk" hearing is held before the parent is excluded from the household and the parent-child relationship is thereby severed, the holding of an expedited hearing within three court days pursuant to Family Court Act § 1028, upon the parent's request, is mandated so that the question of reunification of the parent and child pending resolution of the proceeding may be determined. Due process requires the parent's prompt, full, and fair opportunity to contest his or her exclusion from daily interaction with his or her children in this manner.

The contrary reasoning of the Family Court in this case, and of the court in *Matter of T.L., Jr.* (13 Misc 3d 1179 [2006]), is unpersuasive. Both of those courts concluded that the hearing procedure in Family Court Act § 1028 is strictly limited only to those situations in which there is a physical removal of the child from the family residence, and that the mechanism for a parent to challenge a full stay away order of protection barring him from the home and from contact with the children is an application pursuant to Family Court Act § 1061 to modify the order of protection. However, this approach improperly elevates the physical location of the child over the interference with the constitutionally protected parent-child relationship as the determinative factor in assessing what process is due to the excluded parent. In *Matter of Lucinda R. (Tabitha L.)* (85 AD3d 78 [2011]), we rejected just such a focus on the children's location where the Family Court had ruled that a section 1028 hearing was unavailable if the subject children had been removed from the home of one parent and then placed in the custody of the other parent rather than with a governmental agency. Eschewing reliance upon any distinction between the children's physical relocation to another parent as opposed to foster care, we held that entitlement to a hearing pursuant to Family Court Act § 1028 was instead triggered by the interfer-

ence with the parent's constitutional right to the care and custody of the children, since "part 2 of article 10, of which Family Court Act § 1028 is part, is concerned with the State's power to disrupt a parent's physical custody of a child" (*Matter of Lucinda R. [Tabitha L.]*, 85 AD3d at 87). Inasmuch as physical custody was disrupted in that case, we determined that the aggrieved parent was entitled to a Family Court Act § 1028 hearing.

Moreover, in *Matter of Commissioner of Social Servs. (Alexandria H.)* (159 Misc 2d 345, 348 [Fam Ct, Kings County 1993]), the Family Court determined that once a neglect petition was filed and the subject child, although not physically removed from her residence, was removed from the care and custody of her father, the respondent father was entitled to an expedited hearing pursuant to Family Court Act § 1028, since "[i]t is [the respondent father's] status as a legal and physical custodian of the child that activates the rights under Family Court Act § 1028." Also instructive in this regard is the decision of the United States Court of Appeals for the Second Circuit in *Gottlieb v County of Orange* (84 F3d 511 [1996]). There, a father under investigation for child abuse was given the choice by the County of moving out of the family home for 90 days or having the children removed from the home pending the investigation. The father chose to move out, but he subsequently sued on the ground that his due process rights were violated because he was not afforded any opportunity for judicial review of his exclusion from the home. The Second Circuit, relying on the *Alexandria H.* decision, rejected the claim, noting that the due process protections of Family Court Act § 1028 were available not only in situations where a child is removed from the home, but where the parent is excluded from contact with the child as well. Hence, the court reasoned that since the father could have obtained prompt judicial review of his exclusion from the home under Family Court Act § 1028, his due process claim lacked merit.

The issuance of a full stay away order of protection excluding the father from the family home in the present case is for all practical purposes akin to a physical removal of the children from his care and custody, like the situations in the foregoing decisions. Indeed, that order produced the same cessation in his contact with the children, and the same severance of his relationship with them, that an order removing the children from the family residence would bring about. Since the

same constitutional considerations are at issue, due process requires that the father receive the same expedited hearing applying the same "imminent risk" standard afforded by Family Court Act § 1028 in seeking his reunification with the children pending the resolution of the child protective proceeding (*see generally Nicholson v Scoppetta*, 3 NY3d at 376 n 8; *Matter of Sara A. [Ashik A.]*, 141 AD3d 646, 647 [2016]; *Matter of Deonna E. [Marvell C.]*, 104 AD3d 943, 944 [2013]; *Matter of Forrest S.-R. [Shirley X.S.]*, 101 AD3d 734, 735 [2012]; *Matter of Kristina R.*, 21 AD3d at 562). To interpret Family Court Act § 1028 in such a manner as to deny the father a hearing under that statute in the circumstances presented is inconsistent both with due process and with the stated purpose of article 10 to provide a mechanism to protect children while preserving parental rights (*see* Family Ct Act § 1011). Such a construction would raise grave doubts as to the constitutionality of the statute, a result which the courts should strive to avoid (*see LaValle v Hayden*, 98 NY2d 155, 161 [2002]; *Matter of Jacob*, 86 NY2d 651, 667 [1995]).

Additionally, it bears noting that the mechanism available under Family Court Act § 1061 for modification of an order of protection is not an adequate substitute for a hearing pursuant to Family Court Act § 1028 to safeguard the due process rights of a parent in the father's position. Unlike the latter statute, the conducting of a hearing under section 1061 is not mandated, but is left entirely to the Family Court's discretion. Furthermore, section 1061 sets forth no timetable for holding such a hearing and, given the Family Court's ever-burgeoning docket, it is certainly conceivable that a parent temporarily excluded from contact with his children could wait many weeks or months before a hearing on his request to reunite with them is conducted under that statute (*see Matter of Lucinda R. [Tabitha L.]*, 85 AD3d at 81 [observing that the hearing pursuant to Family Ct Act § 1061 in that case was not held for nearly 18 months]). Substantively, Family Court Act § 1061 authorizes modification of an order "[f]or good cause shown," whereas the stricter standard of Family Court Act § 1028 (a) requires that the court grant the parent's application to be reunited with the child unless that relief "presents an imminent risk to the child's life or health." Accordingly, in view of the substantial procedural and substantive differences between the two statutes, Family Court Act § 1061 cannot serve as a satisfactory alternative to the due process protections afforded by Family Court Act § 1028.

Family Court Act article 10 child protective proceedings frequently present compelling circumstances requiring courts to make difficult decisions in the execution of their paramount obligation to protect the lives and health of the children before them. However, those decisions must include a balancing of each child's welfare with the constitutionally protected interest in the relationship between parent and child. Since an exclusionary order of protection compromises the parent-child relationship in the same manner as the relocation of the child would, it must be governed by the same legal standards as are provided for removal of a child in Family Court Act §§ 1027 and 1028. Due process demands nothing less.

Accordingly, the order is reversed, on the law.

LEVENTHAL, HALL and SGROI, JJ., concur.

Ordered that the order is reversed, on the law, without costs or disbursements.