Matter of F.W. (Monroe W.) (2020 NY Slip Op 02385)





Matter of F.W. (Monroe W.)


2020 NY Slip Op 02385


Decided on April 23, 2020


Appellate Division, First Department


Singh, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 23, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rosalyn H. Richter, J.P.
Sallie Manzanet-Daniels
Anil C. Singh
Peter H. Moulton, JJ.


11240 

[*1]In re F. W., and Another, Children Under Eighteen Years of Age, etc., Monroe W., Respondent-Appellant, Administration for Children's Services, Petitioner-Respondent.



Respondent appeals from an order of the Family Court, Bronx County (Elenor C. Reid, J.), entered on or about September 27, 2018, which, to the extent appealed from as limited by the briefs, denied that branch of respondent father's motion for an "expedited hearing" to determine whether the subject children who were removed through a failed trial discharge should be returned to him.




The Bronx Defenders, Bronx (David Shalleck-Klein and Saul Zipkin of counsel), and NYU School of Law Family Defense Clinic Washington SQ. Legal Services, New York (Christine Gottlieb and Amy Mulzer of counsel), for appellant.
James E. Johnson, Corporation Counsel, New York (Anna W. Gottlieb and Fay Ng of counsel), for respondent.
Dawne A. Mitchell, The Legal Aid Society, New York (Gary Solomon of counsel), attorney for the children.



SINGH, J.


We are asked to decide whether Family Court properly denied respondent's motion for an expedited hearing on a post-dispositional neglect proceeding. We find that Family Court should have granted the motion and held a prompt hearing in accordance with the parent's and the children's right to due [*2]process. Accordingly, we reverse.
On or about April 25, 2014, the Administration for Children's Services (ACS) filed a neglect petition against respondent Monroe W. (father) on behalf of his two young children. ACS alleged that the father perpetrated acts of violence against the mother in the children's presence. On November 19, 2014, Family Court entered a finding of neglect against the father. The children were initially released to the custody of their mother. They were later removed from her care and placed in nonkinship foster care.
The father moved by order to show cause (OSC) seeking a trial discharge of the children to him [FN1]. On March 7, 2016, the children were discharged to the father. However, a few months thereafter, the children were removed from the father's care and placed back in nonkinship foster care based on an allegation of excessive corporal punishment, which was later determined "unfounded" after an ACS investigation. On February 7, 2017, Family Court directed the agency to trial discharge the children to the father "unless significant barrier to reunification" existed.
Again, on January 24, 2018, ACS removed the children from the father's care based on an allegation of corporal punishment. The father filed another OSC seeking an "expedited hearing to determine whether the children [] can be returned to their home
with their father."
On January 26, 2018, the parties appeared before Family Court, at which point the issue of whether the father was entitled to an expedited hearing arose. The Attorney for the Children (AFC) stated that she was not ready to participate in a hearing, as she had not yet spoken to the children and was "double booked," but she also did not believe that the father was entitled to an expedited hearing as the matter was post- disposition. In response, the court asked to be further briefed on the issue. The parties agreed.
Two weeks later, on February 14, 2018, the hearing commenced. It took six months to complete. Testimony at the hearing suggested that the children manifested negative effects from the family separation. The father testified that they would become upset at the end of their visits and tell him that they wanted to go home with him. The children's foster mother reported that the four-year-old child had begun wetting the bed.
At the April 4, 2018 court appearance, the father's counsel requested a decision on the motion seeking an expedited hearing. The court stated that the branch of a motion seeking an expedited hearing was now moot as the court "granted an expedited hearing" and they were "just in the midst of it." The father's counsel responded that the court had "granted the beginning of an expedited hearing and gave everyone a chance to do replies," referring to the directive of the court from January 2018. The court did not respond.
Throughout the next few months the father's counsel [*3]repeatedly asked for earlier dates for the continued hearing. Counsel did not move to renew the application seeking an expedited hearing. In his summation, the father's counsel did not ask for a ruling on the timing of the hearing, and instead stated that the "court was correct to grant an expedited hearing."
On August 7, 2018, Family Court issued its decision from the bench, finding that the allegations against the father were not credible, and directed a conditional trial discharge. The children, now ages five and seven, were finally discharged to the father on March 25, 2019.
In a subsequent memorandum decision dated September 24, 2018, the court denied the branch of the father's application for an expedited hearing. The court reasoned that Family Court Act (FCA) § 1089, which is triggered by the court's determination after a dispositional hearing that placement of a child with the Commissioner of ACS is in the child's best interest, does not qualify its references to a hearing, nor does it provide for an expedited hearing. Thus, in the absence of an express statutory provision granting a parent the right to a hearing within a specific time thereafter, Family Court rejected the father's argument that he was entitled to a hearing within a "matter of days," holding that the court has "broad discretion to determine the time to hold a hearing." The court also noted that the father was afforded due process at the fact-finding and dispositional hearing stages. The court did not address its earlier statement [FN2] that the motion seeking an expedited hearing was moot.
Initially, we agree with the parties that although the children were ultimately discharged to the father, after a six- month hearing, the issues raised on this appeal fall into an exception to the mootness doctrine in that they (1) are likely to reoccur; (2) typically evade review; and (3) involve "significant or important questions not previously passed on" (Matter of Hearst Corp v Clyne, 50 NY2d 707, 714-715 [1980]; see Matter of Elizabeth C. [Omar C.], 156 AD3d 193, 198-202 [2d Dept 2017]). Accordingly, while the merits of the court's ultimate trial decision are not before us on this appeal, we decide whether the court's denial of the father's motion for an expedited hearing was proper.
We begin our discussion with the undisputed principle that a parent's interest "in the care, custody, and control of their children[] is perhaps the oldest of the fundamental liberty interests" (Troxel v Granville, 530 US 57, 65 [2000]). Accordingly, parents are afforded the protections of the Due Process Clause of the 14th Amendment in protecting this interest (see id. at 66; see also Matter of Marie B., 62 NY2d 352, 358 [1984]). Similarly, the children have a parallel "right to be reared by [their] parent" (Matter of Bennett v Jeffreys, 40 NY2d 543, 546 [1976]).
We reject ACS's assertion that, in light of the prior finding of neglect against the father, the government has a greater interest in ensuring a correct adjudication, even if that may lengthen the proceeding. We agree that ACS has an interest in correct adjudication because "an erroneous failure to place the child [in foster care] may have disastrous consequences" (Matter of Tammie Z., 66 NY2d 1, 4-5 [1985]). This concern must be weighed against the "significant emotional harm" inflicted upon children by temporarily separating them from their parents (Vivek S. Sankaran, "Out of State and Out of Luck: The Treatment of Non-Custodial Parents Under the [*4]Interstate Compact on the Placement of Children," 25 Yale L & Pol'y Rev 63, 64 fn 7 [2006]).[FN3]
We find that a parent's private interest in having custody of his or her children, the children's private interest in residing with their parent, and the undisputed harm to these interests are factors that merit equal consideration. On this record, ACS fails to establish that the lengthy delay was related to its interest in protecting the children. Rather, the hearing was prolonged over six months because of the court's and attorneys' scheduling conflicts. There is no indication that the completion of the hearing was caused by difficult legal issues, or by the need to obtain elusive evidence, or by some other factor related to an accurate assessment of the best interest of the children (see generally Federal Deposit Ins. Corp. v Mallen, 486 US 230, 242 [1988], citing Mathews v Eldridge, 424 US 319, 334-335 [1976]).
Even though this is a post-dispositional matter, the father is entitled to the strict due process safeguards afforded in neglect proceedings. "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State" (Santosky v Kramer, 455 US 745, 753 [1982]). This rationale equally applies to the primacy of a parent's fundamental liberty interest, and the importance of procedural due process in protecting that interest, particularly when a parent and child are physically separated (cf. Matter of Elizabeth C., 156 AD3d at 203). Accordingly, we find that a parent is entitled to a prompt hearing on the agency's determination to remove the children from his or her physical custody through a failed trial discharge.
Finally, we note that the FCA is silent as to the specific procedural time frames that apply when a child has already been removed from a parent's physical custody after a fact-finding determination. We decline to impose a specific time frame as to what constitutes a "prompt" or "expedited" judicial review.[FN4] Instead, we rely on the general precept that a post-deprivation hearing "should be measured in hours and days, not weeks and months,"[FN5] based on the facts and circumstances of the matter (Egervary v Rooney, 80 F Supp 2d 491, 503 [ED Pa 2000], revd on other grounds sub nom. Egervary v Young, 366 F3d 238 [3d Cir 2004] [collecting and citing cases and concluding that a seven-month delay in judicial review of a child removal violated due [*5]process]).
Accordingly, order of the Family Court, Bronx County (Elenor C. Reid, J.), entered on or about September 27, 2018, which, to the extent appealed from as limited by the briefs, denied that branch of respondent father's motion for an "expedited hearing" to determine whether the subject children who were removed through a failed trial discharge should be returned to him, should be reversed, on the law, without costs, and that branch of the father's motion granted.
All concur.
Order, Family Court, Bronx County (Elenor C. Reid, J.), entered on or about September 27, 2018, reversed, on the law, without costs, and that branch of the father's motion granted.
Opinion by Singh, J. All concur.
Richter, J.P., Manzanet-Daniels, Singh, Moulton, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: APRIL 23, 2020
CLERK



Footnotes

Footnote 1: A trial discharge "shall mean that the child is physically returned to the parent while the child remains in the care and custody of the local social services district" (Family Court Act (FCA) §§ 1055[b][i][E]; 1089[d][2][viii][C]). There is no time limit on how long a child may reside with a parent on trial discharge status (id.).

Footnote 2: We reject ACS' argument that since Family Court denied the father's request for an expedited hearing, the denial should have been appealed immediately. The transcripts and record do not reflect a denial until its written decision, dated September 24, 2018, which the father appeals from. 

Footnote 3: Studies have established that "[e]ven short-term removals that are reversed can have lasting effects on vulnerable children" (Stephanie Clifford and Jessica Silver-Greenberg, Foster Care as Punishment: The New Reality of "Jane Crow," NY Times, July 21, 2017 [available at https://www.nytimes.com/2017/07/21/nyregion/ foster-care-nyc-jane-crow.html] [last accessed April 4, 2020]).

Footnote 4: Contrary to the father's argument, the FCA cannot be read to establish a right to a hearing within 30 days in cases such as this one. Any imposition of a defined time frame is a matter to be addressed by the legislature within the constraints of due process.

Footnote 5: We recognize that Family Court has a large caseload with competing deadlines which may cause slight delays. We do not hold that in every instance a hearing that takes "weeks and months" is inappropriate, especially when there is a sound basis for delay. Rather, there should be a case-by-case evaluation, but the court should value promptness whenever possible.