Matter of Shdaya B. (Rahdasha B.--Carlton M.) (2023 NY Slip Op 01599)

Matter of Shdaya B. (Rahdasha B.--Carlton M.)

2023 NY Slip Op 01599

Decided on March 24, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 24, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., LINDLEY, CURRAN, BANNISTER, AND MONTOUR, JJ.

27 CAF 21-01656

[*1]IN THE MATTER OF SHDAYA B., KAYLITA B.-M., CARLEIJAHZE B.-M., CARLITO B.-M., AND KHAZWUAN B.-M. 
ONONDAGA COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, PETITIONER-RESPONDENT; RAHDASHA B., RESPONDENT. CARLTON M., APPELLANT.

FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (PHILIP ROTHSCHILD OF COUNSEL), FOR APPELLANT.
ANDREW S. GREENBERG, SYRACUSE, ATTORNEY FOR THE CHILDREN. 

 Appeal from an order of the Family Court, Onondaga County (Julie A. Cerio, J.), entered September 23, 2021 in a proceeding pursuant to Family Court Act article 10. The order, inter alia, granted the petition to modify a prior order of fact-finding and disposition and placed the subject children in the custody of petitioner. 
It is hereby ORDERED that said appeal is dismissed insofar as it concerns respondent's oldest child and the order is unanimously modified on the law by denying the petition with respect to appellant's children and vacating the provisions with respect to those children and as modified the order is affirmed without costs and the matter is remitted to Family Court, Onondaga County, for further proceedings in accordance with the following memorandum: In this proceeding pursuant to Family Court Act article 10, non-respondent father appeals from an order that, inter alia, granted the petition of Onondaga County Department of Children and Family Services seeking to modify a prior order of fact-finding and disposition by removing the subject children from their respective relative placements and placing them in foster care until the next permanency hearing.
Initially, as he correctly concedes, the father does not have standing to contest the order insofar as it relates to respondent's oldest child, to whom he is not related. We therefore dismiss the appeal insofar as it relates to that child's placement (see generally Family Ct Act § 1035 [d]; Matter of Andreija N. [Michael N.—Tiffany O.], 206 AD3d 1081, 1082 [3d Dept 2022]).
We agree with the father that the remainder of the appeal has not been rendered moot despite the expiration of the order and the issuance of subsequent permanency orders. Generally, where an order has expired by its own terms, an appeal from that order is rendered moot (see Matter of Juliette R. [Jordan R.T.] [appeal No. 2], 203 AD3d 1678, 1678-1679 [4th Dept 2022]; Matter of Lil B. J.-Z. [Jessica N.J.] [appeal No. 2], 194 AD3d 1413, 1414 [4th Dept 2021]). Similarly, a challenge to a dispositional order is generally moot where a superseding permanency order has been entered (see Matter of Anthony L. [Lisa P.], 144 AD3d 1690, 1691 [4th Dept 2016], lv denied 28 NY3d 914 [2017]). This is so because "the power of a court to declare the law only arises out of, and is limited to, determining the rights of persons which are actually controverted in a particular case pending before the tribunal," and the courts therefore are unable to address "academic, hypothetical, moot, or otherwise abstract questions" (Matter of Hearst Corp. v Clyne, 50 NY2d 707, 713 [1980]; see also Matter of Elizabeth C. [Omar C.], 156 AD3d 193, 198-199 [2d Dept 2017]). Thus, a court generally will refrain from deciding the merits of a matter "unless an adjudication of the merits will result in immediate and practical consequences [*2]to the parties" (Coleman v Daines, 19 NY3d 1087, 1090 [2012]; see Hearst, 50 NY2d at 714; see also Elizabeth C., 156 AD3d at 199). However, the Social Services Law provides that, whenever a child "shall have been in foster care for [15] months of the most recent [22] months . . . the authorized agency having care of the child shall file a petition" to terminate parental rights unless, as relevant here, "the child is being cared for by a relative" (§ 384-b [3] [l] [i] [A] [emphasis added]). Thus, we agree with the father that his appeal from the order moving his children from relative placement to foster care is not moot because that change in placement "may, in future proceedings, affect [his] status or parental rights" (Matter of Alexis AA. [John AA.], 97 AD3d 927, 928 [3d Dept 2012] [internal quotation marks omitted]; see Matter of Kenneth QQ. [Jodi QQ.], 77 AD3d 1223, 1224 [3d Dept 2010]; see generally Matter of Justyce HH. [Andrew II.], 136 AD3d 1181, 1182 [3d Dept 2016]) by altering the obligations of petitioner with respect to a future petition to terminate the father's parental rights.
With respect to the merits, we agree with the father that Family Court erred in granting the petition with respect to his children, and we therefore modify the order accordingly. Pursuant to Family Court Act § 1061, the court may "set aside, modify, or vacate any order issued in the course of a child protective proceeding [f]or good cause shown" (Matter of Alexa S. [Rachel J.S.], 198 AD3d 972, 973 [2d Dept 2021] [internal quotation marks omitted]). We conclude that petitioner failed to show good cause to modify the placement of the children.
With respect to the placement of the father's two youngest children with their paternal grandmother, petitioner alleged that a change in placement was warranted because the grandmother employed corporal punishment and because she failed to secure a larger living space to accommodate the children. The evidence adduced at the hearing established that the grandmother did engage in a single instance of corporal punishment by hitting the youngest child on her bottom. However, there was no evidence that the punishment was excessive (see generally Matter of Kayla K. [Emma P.-T.], 204 AD3d 1412, 1413 [4th Dept 2022]; Matter of Elisa V. [Hung V.], 159 AD3d 827, 828 [2d Dept 2018]; Matter of Anastasia L.-D. [Ronald D.], 113 AD3d 685, 686-687 [2d Dept 2014]) and there was no evidence that the grandmother's conduct was part of a pattern of excessive corporal punishment (see generally Matter of Nicholas W. [Raymond W.], 90 AD3d 1614, 1615 [4th Dept 2011]). Further, with respect to the issue of housing, there was no evidence contradicting the grandmother's testimony that she was unable to obtain more spacious housing because, although the children were placed in her care, she could not obtain a voucher for larger housing without proof that the children were placed in her custody permanently.
With respect to the placement of the father's two oldest children with their paternal aunt, petitioner alleged that a change in placement was warranted because the aunt permitted corporal punishment and because she went on vacation and left the children with an inappropriate caregiver. Although the caseworker testified at the hearing that one of the children had reported to school staff that she was fearful of the aunt and uncle, the caseworker did not speak to that child or to the aunt about the issue, but only to one of the child's siblings, who indicated that the uncle had spanked the child after she intentionally broke a television. Thus, we conclude that, even if the alleged incident did occur, "there was no indication that the physical contact rose to a level beyond that of proportionate disciplinary measures" (Forrest v Forrest, 212 AD2d 475, 476 [1st Dept 1995]; see Anastasia L.-D., 113 AD3d at 686-687). Further, there is no evidence that the aunt was informed that corporal punishment was not permitted or that she was even aware that the uncle had allegedly engaged in such conduct (see generally Matter of Dontay B. [Octavia F.], 81 AD3d 539, 540 [1st Dept 2011]). According to the family support therapist with whom the children were working, the aunt was engaged in the children's services and the children had "been doing very well" in her custody. The family support therapist wrote that the children "have a strong relationship with their aunt and uncle," as well as their cousins, and that she believed "it could be very disruptive to separate the older children". Nor did good cause exist based on the aunt's decision not to bring the children in her care, who were under the age of 10, on a pre-planned vacation to celebrate her oldest child's 21st birthday. The aunt left the children in the care of a relative with whom petitioner had previously placed two children for a brief period of time, and there was no evidence that the aunt was aware that the relative should not babysit the children. In light of the passage of over a year and a half since the entry of the order granting the petition to modify the placement of the subject children and because it is unclear whether relative placement would be in the children's best interest, we remit the matter to Family Court for a hearing to determine whether the best interests of the father's children require [*3]modification of their placement (see Matter of Hannah D., 292 AD2d 867, 867-868 [4th Dept 2002]; Matter of Alexis E., 272
AD2d 935, 936 [4th Dept 2000]).
Entered: March 24, 2023
Ann Dillon Flynn
Clerk of the Court