Matter of Danna T. (Miguel T.) (2024 NY Slip Op 24008)

[*1]

Matter of Danna T. (Miguel T.)

2024 NY Slip Op 24008

Decided on January 11, 2024

Family Court, Kings County

Pitchal, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on January 11, 2024
Family Court, Kings County

In the Matter of Danna T. 
 A Child under Eighteen Years of Age Alleged to be Neglected by Miguel T.

Docket No. NN-xxxx/24

Ahuva Kohanteb, Esq.
Administration for Children's Services
330 Jay Street, 12th Floor
Brooklyn, NY 11201
Chas Budnick, Esq.
Brooklyn Defender Services
177 Livingston St., 7th Floor Brooklyn, NY 11201
Provisional Counsel for Respondent Miguel T.
Emmanuel Ntiamoah, Esq.
26 Court St., Ste. 1309
Brooklyn, NY 11242
Counsel for Non-Respondent Raquel C.
Abby Finkelman, Esq.
Legal Aid Society
330 Jay Street, Room 3112
Brooklyn, NY 11201
Attorney for the Child

Erik S. Pitchal, J.

The contested issue before the Court in this matter touches on a central question in the modern welfare state: when a child is at risk of harm from one parent, what is the proper role of the government vis a vis the child's other, non-offending parent in protecting her? In this case, the Administration for Children's Services ("ACS") asserts that it is best positioned to ensure the safety of a vulnerable child and that the rights of the non-offending parent must be subordinated to the state's involvement. Counsel for the child's mother claims that because she has done nothing wrong, lives apart from the respondent, and is the victim of violence at his hands, she should not suffer the liberty intrusion and affront to her dignity that ACS's suggested course of action would entail. The Court is called on to resolve this challenging issue, and, for the reasons that follow, rules in favor of the mother. 
By petition dated January 11, 2024, ACS alleges that respondent Miguel T. neglected his child Danna, by perpetrating acts of domestic violence against Danna's mother, Raquel C.At the first appearance on the petition, ACS asked for a temporary order releasing the child to Ms. C. with court ordered supervision and a temporary order of protection against Mr. T. Ms. C. is not being charged with any parental malfeasance and is a non-respondent in this proceeding. Her attorney agrees the child should be in her care and that there should be an order of protection against the child's father, but on behalf of the mother, he objects to court-ordered supervision over her.
ACS concedes that prior to the filing of the petition, the child lived exclusively with Ms. C.. Mr. T. lived elsewhere, and in fact, his whereabouts are presently unknown; Ms. C. was the child's de facto sole custodian. She has other children in her care; the respondent was not charged with being a person legally responsible for them and they are not named on the petition. 
Every day in New York City, ACS files petitions pursuant to Article 10 of the Family [*2]Court Act, invoking the jurisdiction of the court to authorize state intervention into the otherwise constitutionally protected realm of family life. While the government is entitled to exercise its parens patriae role to protect children, Prince v. Massachusetts, 321 U.S. 158 (1944), that role is constrained when there is an available, fit parent. Stanley v. Illinois, 405 U.S. 645 (1972). Absent evidence that they are unfit or that their actions put their children at risk of harm, parents have the fundamental right to decide what is best for them; that an agent of the state might disagree with these decisions is not an entryway for valid state intervention. Troxel v. Granville, 530 U.S. 57 (2000). 
New York law attempts to balance these interests — child protection on the one hand, and the sanctity of family life on the other — through its statutory scheme. The purpose of Article 10 of the Family Court Act itself is "to establish procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being. It is designed to provide a due process of law for determining when the state, through its family court, may intervene against the wishes of a parent on behalf of a child so that his needs are properly met." Family Court Act § 1011.
In particular, Family Court Act § 1017 provides a framework for the involvement of non-respondent parents — those who are not charged with maltreating their children — once state intervention has been properly initiated on allegations that the other parent did commit child abuse or neglect. It is this section that ACS typically cites, and on which Family Court daily relies, for orders requiring non-respondent parents to cooperate with ACS supervision. However, as the facts of this case illustrate, § 1017 is not applicable to every family who become the subjects of an Article 10 filing. In fact, it appears that § 1017 has been misunderstood and misapplied in countless cases. 
There are three typical scenarios involving one parent who is a respondent and the other who is a non-respondent. In the first, the respondent was the primary physical custodian of the child prior to the filing of the petition, and ACS seeks an order removing the child from the respondent's home and care and releasing the child to the non-respondent instead. Under the law, this is considered a "removal" of the child from a parent, as defined by Family Court Act § 1027. See Matter of Lucinda R., 85 AD3d 78 (2d Dep't. 2011).
In the second scenario, the two parents resided together with the child prior to the filing of the petition. In such a case, ACS seeks an order excluding the respondent parent from the home, leaving the child in the care of the second, non-respondent parent. Though the child does not change residences, this is nevertheless also considered a "removal" of the child from a parent. See Matter of Elizabeth C., 156 AD3d 193 (2d Dep't. 2017).
In the third scenario, the child lived exclusively with the non-respondent parent prior to ACS filing a case against the non-custodial, respondent parent. In these cases, ACS seeks an order of protection against the respondent to limit his contact with the child, but does not seek any order which changes custody or the physical home where the child resides. 
In all three of these scenarios, ACS typically asks for an order of protection against the [*3]respondent, and an order "releasing the child to the non-respondent parent, with ACS supervision, including announced and unannounced home visits" to the home of the non-respondent. Family Court has the statutory authority to enter orders that non-respondent parents cooperate with ACS supervision in the Lucinda R. and Elizabeth C. type scenarios, but it does not have this authority under the third type of case described above. Put simply, § 1017 does not apply to the third category.
The first rule of statutory construction is that words should be given their plain meaning. McKinney's Cons. Laws of NY, Statutes § 232. And § 1017 is plain on its face: it applies "[i]n any proceeding under this article, when the court determines that a child must be removed from his or her home, pursuant to part two of this article." Family Court Act § 1017(1). Part two of Article 10 includes § 1027, and as noted above, the meaning of "removed" under § 1027 has been defined by cases such as Lucinda R. and Elizabeth C. 
However, there is no sensible reading of § 1017 or § 1027 which could make the third scenario — the one at issue in this particular case — one in which the child has been "removed" from a parent. On January 5, 2024, the child Danna was living with her mother, when her father allegedly came to the mother's home and violently assaulted her. On January 11, 2024, ACS filed a petition against Mr. T. ACS's request, at the end of the first appearance, is for the child to continue living with her mother, in the same residence as always. This is not a removal from the non-respondent parent, and it is not a removal from the home. Nor is it a removal from the respondent parent. The child did not live with her father. The child is not being moved from one parent's home to another, as was the case in Lucinda R. The child is not being deprived of the daily care of her father through an order of exclusion, as was the case in Elizabeth C. At most, the child is experiencing a limitation on her visitation with her non-custodial parent, but visitation restrictions — made pursuant to § 1029 and/or § 1030, are not removals. 
The language ACS typically seeks in all one-respondent cases in which there is a suitable non-respondent available to care for the child originates from subsection 3 of § 1017. Even in those cases where § 1017 is applicable, the type of order which ACS requests is optional, not mandatory. "An order temporarily releasing a child to a non-respondent parent. . .may not be granted unless the person. . .to whom the child is released. . .submits to the jurisdiction of the court with respect to the child. The order shall set forth the terms and conditions applicable to such person. . .and may include, but may not be limited to, a direction for such person to cooperate with. . .visits by the child protection agency, including visits in the home." Family Court Act § 1017(3).
Quite clearly, however, as noted above, § 1017 is not applicable at all to cases such as the one presently before the Court. And therefore, the Court has no authority to require Ms. C. to submit to its jurisdiction, or even to "release" the child to her. The child has not been removed, so there is no cause to "release." The status quo ante regarding custody and care remains in effect, limited only by an order of protection against Mr. T. In this case, the sole focus of the court, as limited by statute, is on the respondent and the child, not the non-respondent. 
ACS may be concerned that this reading of § 1017 hampers its child protective mission. However, all other statutory provisions that might apply generally would still apply in this case [*4]and others like it. For example, if Ms. C. does not voluntarily cooperate in making the child available for reasonable, periodic assessments — to verify that Mr. T. is not violating the order of protection, for example — then the provision of Family Court Act § 1034 (requiring a parent to produce a child to ACS for an interview) remain available. Fundamentally, however, because Ms. C. is not alleged to be unfit, and because the child has not been removed from a parent or her home, the only person responsible under the law for protecting Danna is her mother. That her father is alleged to have harmed the child does not give the state carte blanche to make demands on her mother. The proper balance is reached by giving § 1017 its plain meaning, and leaving Ms. C. as the primary protector of her child. 
THEREFORE, for the foregoing reasons, IT IS HEREBY ORDERED THAT ACS's application for an order directing Ms. Caceras to cooperate with ACS supervision is denied.
Dated: January 11, 2024
Brooklyn, NY
ENTER 
Hon. Erik S. Pitchal